Lenore L. Albert, Esq. SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Defendant, Counter-claimant, and Third Party Plaintiffs, Cristine Sutton, Brian Sutton

FILED
2012 JUN 11 AM 10:36
CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES
BY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| TITLE RESOURCES GUARANTY COMPANY, a Texas corporation<br><br>Plaintiffs,<br>vs.<br>CHRISTINE SUTTON f/k/a CHRISTINE CHANG, an individual; BRYAN GEEKEONG SUTTON, an Individual; and DOES 1 through 10, inclusive.<br><br>Defendants.<br><br>CRISTINE SUTTON, an individual; BRIAN GEEKEONG SUTTON, an Individual,<br><br>Counter-claimants,<br>vs.<br><br>TITLE RESOURCES GUARANTY COMPANY, a Texas corporation; and DOES 1 through 10, inclusive.<br><br>Counter-defendants. | **CASE NO. CV12-2445 SVW (MANx)**<br><br>Assigned to the Hon. Stephen V. Wilson<br><br>**COUNTER CLAIM AND THIRD PARTY COMPLAINT OF CRISTINE SUTTON AND BRIAN SUTTON**<br><br>**[JURY DEMANDED]** |

| | |
|---|---|
| CRISTINE SUTTON, an individual; BRIAN GEEKEONG SUTTON, an Individual,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., JENNIFER MCTIGUE, MARC MELTON, an Individual; and DOES 1 through 10, inclusive.<br><br>Third-Party Defendants. | |

Counter-claimant and Third Party Plaintiffs BRIAN SUTTON and CRISTINE SUTTON, husband and wife, (referred to as "Counter-claimant and Third Party Plaintiff" or "Counter-claimant and Third Party Plaintiffs"), by and through their attorney, after being sued in federal court, bring this action against the Counter-defendant, Title Resources Guaranty Company ("counter-defendant"); and also bring a Third Party Complaint against Third Party Defendants, Wells Fargo Bank, N.A., Jennifer McTigue, Marc Melton, and each of them so captioned, (collectively the "Third Party Defendants") and alleges the following on information and belief, except as to those allegations which pertain to the Counter-claimant and Third Party Plaintiffs and are within their personal knowledge:

**PARTIES**

1. Counter-claimant and Third Party Plaintiffs, BRIAN SUTTON and CRISTINE SUTTON, at all times mentioned herein relevant to this complaint were the residents and owners of real property commonly known as 225 Aumoe Road, Kailua, Hawaii (hereinafter the "Hawaii Property")

2. Counter-defendant, TITLE RESOURCES GROUP., (TRG or title insurer), has its principal place of business in Texas, and regularly conducts business in the State of California, and is authorized to conduct business in the State of California.

3. Third Party Defendant WELLS FARGO BANK, N.A. ("WELLS FARGO" or "WF") has its principal place of business at 420 Montgomery Street, San Francisco, CA 94104. Counter-claimant and Third Party Plaintiff is informed and believes and alleges thereon that WELLS FARGO BANK, N.A. acted as both the Lender of the buyer and the Lender of the Seller with regard to the Pasadena property escrow at issue in the Complaint.

4. Third Party Defendant JENNIFER MCTIGUE ("McTigue"), at all times mentioned herein resides in Hawaii and is a licensed life insurance agent.

5. Third Party Defendant MARC MELTON ("Marc" or "Melton"), at all times mentioned herein resides in Hawaii and was either in a partnership, joint venture, conspiracy, plan, scheme or agency relationship with JENNIFER MCTIGUE as to the material events entailed in this pleading.

6. Counter-claimant and Third Party Plaintiffs do not know the true names and capacities of the Counter-defendant and Third Party Defendants DOES 1 through 10, inclusive, and, as such, names said Counter-defendant and Third Party Defendants by such fictitious names. Counter-claimant and Third Party Plaintiffs will amend the complaint to state the true name and capacity of the DOE Counter-defendant and Third Party Defendant(s) when such information is ascertained.

7. Counter-claimant and Third Party Plaintiffs are informed and believe, and allege thereon, that each Counter-defendant and Third Party Defendant is responsible in some manner for the occurrences alleged in this complaint, and that Counter-claimant and

Third Party Plaintiffs' damages were proximately caused by the Counter-defendant and Third Party Defendants at all times mentioned in this complaint.

8. Counter-claimant and Third Party Plaintiffs are further informed and believe, and allege thereon, that each Counter-defendant and Third Party Defendant was the agent, servant, representative, and/or employee of their co-Counter-defendant and Third Party Defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, family members and/or employees, and with the permission and consent of their co-Counter-defendant and Third Party Defendants.

9. Additionally, Counter-claimant and Third Party Plaintiffs are informed and believe, and allege thereon, that each Counter-defendant and Third Party Defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other Counter-defendant and Third Party Defendant and that each corporate Counter-defendant and Third Party Defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

10. Any applicable statutes of limitations have been tolled by the Counter-defendant and Third Party Defendants continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Counter-claimant and Third Party Plaintiffs could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

11. In the alternative, Counter-defendant and Third Party Defendants should be stopped from relying on any statutes of limitations. Counter-defendant and Third Party Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices. Counter-defendant and

Third Party Defendants owed Counter-claimant and Third Party Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

**FACTS**

**THE BIG CON GAME THAT DEFRAUDED CRISTINE SUTTON OUT OF HER PASADENA PROPERTY**

12. Cristine Sutton owned a residential condominium investment property located at 380 South Euclid, #307, Pasadena, California.

13. During the economic slow down, she was neither making a substantial amount of money on her investment nor was she losing money on her investment.

14. Her property was encumbered by a loan from Third Party Defendant Wells Fargo in the amount of 321,000.00, which was secured by a Deed of Trust on the Pasadena Property.

15. At all relevant times, she has been able to successfully rent the property out in a sufficient amount to pay the monthly mortgage and regular expenses but she just wasn't making any profit on it.

16. On or about September 2010, Third Party Defendant McTigue approached Cristine Sutton and represented she knew of a program that would get her loan forgiven on her Pasadena property.

17. During this time period, there were general advertisements and notices from various sources representing that banks were now forgiving principal balances on certain home loans.

18. California was one of the "hardest hit" states for foreclosures and it was one of the states targeted for principal forgiveness.

19. McTigue represented to both Cristine Sutton and Brian Sutton that she knew how to get their principal forgiven by Wells Fargo on the Pasadena property so that

Cristine then could legitimately sell the property and take her money and invest it in life insurance where she would make more money.

20. McTigue told the Suttons the cost for this program would be 10% of the principal balance on the loan.

21. McTigue was working with Marc Melton on this program and the Suttons were introduced to Marc Melton through McTigue.

22. The Suttons ended up signing an agreement with Marc Melton for the lien removal aka loan forgiveness program on or about September 14, 2010 and paid McTigue $32,000.00 on or about November 11, 2010 with check number 1108 so that Wells Fargo would forgive the loan balance and they could invest the money in life insurance with McTigue, who was a licensed life insurance agent.

23. McTigue and Marc Melton proceeded to prepare a series of foreign documents and pre-addressed envelopes and gave the Suttons explicit instructions to follow which consisted of putting the documents in the mail and/or having them notarized and putting them in the mail.

24. The contents of the documents were unfamiliar to the Suttons and were never explained to them other than that this was the process used to forgive the debt and release the lien.

25. Some documents were addressed to Wells Fargo and the others were addressed to Public Agencies in the State of California.

26. At some point in time, after receiving a certain document from Wells Fargo, McTigue and Marc Melton instructed Cristine Sutton to stop making her monthly mortgage payment so Cristine Sutton made her last mortgage payment on the property in October 2010.

27. Every time the Suttons received a letter from Wells Fargo or the state they were given to McTigue and Marc Melton who explained to the Suttons that this was part of the process and reassured them that this was how the loan forgiveness program worked.

28. This would appear to be believable to the Suttons because Wells Fargo did generate and send alternative to foreclosure notices that explained various options.

29. One of the documents prepared by McTigue and Marc Melton was a Deed of Reconveyance along with an envelope to the State of California.

30. McTigue and Marc Melton instructed Brian Sutton to sign the document in front of a notary and put it in the pre addressed envelope and that they would soon get confirmation from the state that their loan was forgiven.

31. Brian Sutton went to a local UPS store and had the document notarized while he signed it, placed it in an envelope and mailed it off as instructed.

32. Wells Fargo never contacted the Suttons explaining to them that they had signed a deed of Reconveyance without authority to do so or what that really meant.

33. The State of California, was actually the County Recorder's Office in Los Angeles County and they duly recorded the document without contacting Brian Sutton to see if he had the power to do so.

34. So, Cristine Sutton put the property up for sale.

35. A buyer presented and escrow was opened.

36. Wells Fargo was the new buyer's lender.

37. TRG was the title insurer for the new buyer.

38. Neither TRG nor Wells Fargo informed Brian Sutton or Cristine Sutton that the old loan with Wells Fargo was clouding title, encumbering the property or still needed to be paid off.

39. Escrow closed and the monies were directed and communicated to McTigue to put in life insurance policies.

40. Then a few months later, the Suttons were contacted by the real estate agent that the buyers were being foreclosed on by Wells Fargo Bank, N.A.

41. Before the Suttons could figure out what happened or contact Wells Fargo, TRG sued the Suttons for fraudulent reconveyance.

42. In effect, McTigue and Marc Melton were not running a loan forgivenss program but were running a fraudulent con-game and the Suttons were just a couple of their victims.

43. Due to this con-game, Cristine Sutton has lost her entire investment property and all of the money, time and expense she invested into to the Pasadena property.

44. Both of the Suttons lost $32,000.00, plus had to incur the expense of defending the lawsuit, attorney fees, costs and the complete, shock, horror, embarrassment, and emotional stress due to McTigue and Marc Melton's con game.

45. But for Wells Fargo and TRG's complete incompetence and negligence, this would have never happened in the first place, as they had the information before them to prevent it.

46. Instead they treated the correspondence and documents coming in on the Pasadena property just like any other distressed homeowner and completely ignored them.

47. The Suttons are not in the real estate industry and had no meaningful opportunity to understand they were being conned because TRG and Wells Fargo just completely ignored the documents.

48. Mr. Sutton works in dental sales and is living in Hawaii.

49. As such, TRG and Wells Fargo's failure to do their own due diligence was a substantial cause of the Suttons' injury too.

50. Wells Fargo proceeded to foreclose on the Pasadena property to satisfy the Sutton loan.

51. Concurrently and with full knowledge of Wells Fargo proceeding in foreclosure, TRG, without paying one dime to Wells Fargo, while Wells Fargo proceeded to foreclose, sued the Suttons for the $321,000.00 and recorded a lis pendens on the Hawaii property, in violation of the One Action/Security First rule.

52. As a result of this violation, the Suttons have been prevented from making any other type of credit transactions that would require the property as a collateral asset.

53. Wells Fargo and TRG should not be exonerated for their conduct on the grounds that their highly publicized continued negligence towards real estate borrowers has allowed the seed of despicable and malicious intermeddling conmen like McTigue and Marc Melton to profit at the expense of victims like Cristine Sutton, Brian Sutton and those similarly situated.

54. Like all confidence games, McTigue and Marc Melton slowly indoctrinated the Suttons and through the use of cleverly placed words and rhetoric first befriended them, gained their trust, obtained control over them and in the end threatened them when the Suttons informed them that they were going to sue.

## BASIC CHRONOLOGY

55. The timeline of transactions and events are as follows:

56. 8/25/06 Grant Deed to CRISTINE CHANG (Sutton), as a single woman, recorded in Los Angeles County Recorder's office on property more commonly known as 380 SOUTH EUCLID AVENUE, UNIT #307, PASADENA, CA 91101 with a note for $321,000.00 to Wells Fargo Bank secured by a deed of trust.

57. 8/14/08 Grant Deed to BRIAN SUTTON, and Cristine Chang (Sutton) as joint tenants, recorded on property more commonly known as 225 AUMOE ROAD, KAILUA, HAWAII, with a note secured by a deed of trust from Bank of Hawaii.

58. Suttons purchase life insurance policies from McTigue prior to September 2010.

59. Suttons are talked into and enter agreement with Marc Melton and McTigue mid September 2010 for lien removal aka loan forgiveness program.

60. Unbeknownst to the Suttons, this program was not legitimate. The program advertised by McTigue and Melton was misleading, like the "homestead" exemptions attorneys used to advertise in the 1990s which was a violation of Business & Professions Code §17537.6. *See, In re Ivan O.B. Morse*, 11 Cal.4th 184 (1995).

61. 11/11/10 Suttons write a check for $32,000.00 to McTigue for the lien removal aka loan forgiveness program, which McTigue accepts and cashes. Suttons believe that Wells Fargo has forgiven their loan, released their lien and that they are free to legally sell the Pasadena property and obtain all proceeds from the sale.

62. Escrow on the Pasadena property opens in or about August 2011.

63. 9/15/11 Escrow on the Pasadena property closes and Cristine Sutton obtains approximately $329,000.00 from the sale then a grant deed in favor of the Wagmans (the buyers) is recorded on or about September 15, 2011.

64. 9/15/11 The Closing statement HUD 1 clearly states that the borrower is responsible for the Wells Fargo loan. It states, "Existing Loans taken subject to Line of Credit from Wells Fargo Bank, N.A."

65. After closing, the Suttons turn over the $329,000 to McTigue to repay the loan/cash value portion of the life insurance policies that the Suttons had previously purchased from McTigue before entering into the September 2010 contract with McTigue and Melton.

66. 1/6/12 Wells Fargo Bank causes a Notice of Default to be recorded on the Pasadena property to nonjudicially foreclose on the Note with Cristine Sutton.

67. 3/21/12 TRG files suit against the Suttons for the proceeds on the loan to Wells Fargo Bank for $321,000.00. (on file).

68. McTigue assures the Suttons they have nothing to worry about and gives the Suttons an "Answer" to file in federal court representing it was prepared by an attorney in Hawaii. (on file).

69. TRG also records a lis pendens on the Hawaii property for the proceeds on the loan to Wells Fargo bank for $321,000.00. (on file).

70. Suttons seek legal counsel and thereafter cash out the life insurance policies and turn over to their counsel to hold in trust after learning for the first time that they were conned.

71. Suttons inform Wells Fargo Bank, through counsel that $321,000.00 are being held in trust, yet Wells Fargo Bank continues with nonjudicial foreclosure.

72. Suttons inform TRG, through counsel that $321,000.00 are being held in trust, yet TRG continues to maintain a lis pendens on the Hawaii property. (on file).

73. As of June 11, 2012 the Notice of Default remains recorded on the Pasadena property for Wells Fargo.

74. As of June 11, 2012 the Lis Pendens remains recorded on the Hawaii property for TRG.

## FIRST CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(Against McTigue and Does 2 through 10)**

75. Third Party Plaintiffs incorporate in this cause of action all of the previous allegations, as though set forth in full herein.

76. McTigue was the Counter-claimant and Third Party Plaintiff's life insurance agent before 9/2010.

77. As such, this Third Party Defendant owed Third Party Plaintiffs a fiduciary duty under state law to place the economic interest of the Suttons ahead of the interest of the agent-broker.

78. When obtaining investment advice, Mrs. Sutton asked McTigue if she knew of a good investment. She explained she was looking for an alternative investment because her Pasadena property was no longer making her a profit.

79. McTigue advised the Sutton to obtain life insurance from her which would make her a profit and protect her family.

80. McTigue advised the Suttons that she could show them how to get the loan forgiven on the Pasadena property so they could sell it then use those proceeds and invest it in life insurance.

81. She reassured the Suttons she had done this many times before, it was legitimate and that they could trust her and should use her services.

82. McTigue charged them $32,000.00 for the lien removal aka loan forgiveness program and, the Suttons are informed and believe and allege thereon that McTigue

also received commission on the series of life insurance policies that they had them purchase from her, also.

83. McTigue then prepared the loan forgiveness package for the Suttons that is the subject of this pleading and also the life insurance policies.

84. McTigue promised the Sutton's that the first mortgage on the Pasadena property would be forgiven and that the State of California would give title back to Cristine after the loan was forgiven.

85. The Sutton's entered into the financial arrangements with McTigue in reliance on that promise in September 2010.

86. After obtaining the life insurance policies, the Suttons discovered that McTigue and Melton were conmen and the papers that were prepared were not legitimate and there was no legitimate lien removal aka loan forgiveness program as McTigue had described.

87. However, this congame, scheme, and/or fraudulent device, was never disclosed when the Suttons paid McTigue $32,000.00 then handed over the obtained funds to be placed into McTigue's life insurance policies.

88. If the Sutton's had known of this material fact, they would have never blindly trusted their life insurance agent's advice and documents they prepared and would have investigated further.

89. After the Sutton's received the funds and transferred them into the life insurance policies, Wells Fargo Bank initiated foreclosure proceedings on the Pasadena property and TRG recorded a lis pendens on the Hawaii property.

90. When the Sutton's attempted to explain to Wells Fargo and TRG what happened, they went after the monetary proceeds in the Sutton's life insurance policies and their bank account.

91. McTigue's representations to the Sutton's were untrue.

92. However, through the slow and convincing indoctrination process by McTigue through rhetoric and building a false friendship and trust, the Sutton's were unable to clearly see or appreciated that the rhetoric was fanatical due to the sensationalism and undertoned threats and intimidation that are commonly used in all confidence schemes.

93. If the Sutton's had known of these material fact, they would have never entered into a loan forgiveness program with the Third Party Defendants McTigue and Melton or used their services in obtaining the life insurance from them.

94. As a result the life insurance brokers did not act in the Sisson's economic interest but in the Counter-defendant and Third Party Defendants own economic behalf in violation of California law causing economic injury to the Sissons.

Wherefore Counter-claimant and Third Party Plaintiff demands judgment against Third Party Defendants as set forth below.

**SECOND CAUSE OF ACTION**

**Fraud**

**(Against McTigue and Melton)**

95. Third Party Plaintiffs incorporate by reference the allegations above as though fully set out herein.

96. On or about September 14, 2010 McTigue represented to Cristine Sutton and Brian Sutton that they could make more money if they sold Cristine Sutton's Pasadena property and invested that money in their life insurance policies that they previously bought from McTigue.

97. This discussion took place at the Sutton's home in Hawaii.

98. McTigue went on to represent she had a successful loan forgiveness program that would cost 10% of the outstanding loan amount and she would prepare all of the

necessary documents and give them detailed steps to follow and the loan would be forgiven and the lien would be released so that Cristine Sutton could then legally sell the property and receive the proceeds to put into life insurance policies that McTigue would sell them.

99. McTigue knew that the loan forgiveness program she devised was not legitimate and her representation to the Sutton's that it was legitimate was not true when she made the statement.

100. At all times mentioned herein Melton was working with McTigue and their were agents for eachother and each statement made by one was adopted by the other in dealing with the Suttons.

101. The Sutton's believed the representations to be true and signed the agreement with Melton and gave McTigue $32,000.00 which McTigue accepted and cashed.

102. The Sutton's reliance was reasonable because McTigue was a life insurance agent and they were befriended by her and she gained their trust.

103. The failure of the bank to respond, then the letters about obtaining relief from the mortgage then receiving a document clearing title from the state of California (really the County Recorders office) all led legitimacy to McTigues representations and Melton's program in the Suttons' mind.

104. However, the rhetoric by McTigue was wild, inflammatory, sensational and when the Suttons veered or questioned McTigue and Melton became intimidating and threatening.

105. Third Party Plaintiff is informed and believes and alleges thereon that McTigue not only knew McTigue had no authority to draft the deed of Reconveyance and execute instructions that Brian Sutton sign and notarize the document then send it to the County Recorder's office, but that McTigue fabricated the appearance of the

legitimacy of the deed of Reconveyance to defraud Third Party Plaintiffs of their interest in the Property so that she could obtain the proceeds to put in life insurance policies that she would gain a commission on.

106. Third Party Defendants' fraud has caused damage to Third Party Plaintiff, inter alia, Third Party Plaintiff must now remove the cloud on their title to the Hawaii property, have lost over $32,000.00 to McTigue, lost their insurance policies that were cashed back out to place in trust, lost the Pasadena property and all of the money paid into and invested in that property, they have suffered reputation damage, emotional distress and the costs of have to defend an action against them. Third Party Plaintiff is presently unaware of the precise amount of such damages but believes it approximates $2,500,000.00.

107. The aforementioned conduct of the Third Party Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Third Party Defendant(s) with the intention on the part of the Third Party Defendant(s) of thereby depriving Third Party Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Third Party Plaintiff to a cruel and unjust hardship in conscious disregard of Third Party Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

Wherefore Third Party Plaintiff demands judgment against Third Party Defendants as set forth below.

## <u>THRD CAUSE OF ACTION</u>

### Negligence

### (Against Wells Fargo and TRG)

108. Counter-claimants and Third Party Plaintiffs incorporate herein by reference the allegations made above as though fully set forth herein.

109. Third Party defendant Wells Fargo owed a duty of due care to ensure that it adequately, timely and properly answered and addressed Cristine Suttons' communications as to the status of her account with Wells Fargo.

110. Third Party Defendant Wells Fargo breached that duty by failing to adequately and properly address the communications sent by her that were prepared by McTigue and Melton.

111. Instead, Wells Fargo ignored her communications until she stopped paying her monthly mortgage which then just automatically triggered and generated their alternatives to foreclosure letters, the responses to which, Wells Fargo again, simply ignored to adequately address.

112. Wells Fargo's failure to personally read and address the communications being sent by Mrs. Sutton was a substantial factor in bringing about the harm to Mrs. Sutton.

113. Their failure to respond until after default then only responding with their cookie-cutter forms only assisted McTigue and Melton in showing Mrs. Sutton that McTigue's loan forgiven program had worked, and as such assisted McTigue and Melton in their scheme to defraud the Suttons.

114. Wells Fargo's later behavior of then allowing escrow to close when Wells Fargo was a party lender to the escrow without realizing what had occurred was further negligence that led to the Suttons' injury.

115. Wells Fargo had a duty to perform due diligence during escrow and inform Cristine Sutton whether or not her property remained encumbered by their loan.

116. Wells Fargo failed to perform that due diligence and allowed escrow to close leading Cristine Sutton to believe that her property was no longer encumbered by that loan.

117. Counter-defendant TRG, as the title insurer during escrow, had a duty to perform due diligence during escrow and inform Cristine Sutton whether or not her property remained encumbered by their loan.

118. TRG failed to perform that due diligence and allowed escrow to close leading Cristine Sutton to believe that her property was no longer encumbered by that loan.

119. As a proximate result of Counter-defendant and Third Party Defendant's breach, she sold her property and lost her entire investment.

120. If she had known that the loan was not forgiven, she would not have stopped making payments on her loan, would have continued to collect rents on the property and would not have sold the Pasadena property to anyone else.

121. As a result of Counter-defendant and Third Party Defendants' breach, Counter-claimant and Third Party Plaintiffs are entitled to actual and general damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**Violation of One Action Rule**

**(Against TRG)**

122. Counter-claimant hereby realleges each of the preceding paragraphs of this Complaint as though fully set forth at length hereat.

123. Counter-defendant TRG offset unsecured funds (by seizing the Hawaii Property through recording a Lis Pendens) in order to satisfy a debt secured by real property (the mortgage).

124. Said offset is a clear violation of California's "One Action Rule" aka "The Security-First Rule" at Code of Civil Procedure §726. This rule states generally that a lender whose loan is secured by an interest real property must exclusively exhaust the security (foreclose on the property) and may not seize or offset any

unsecured property (such as cash or the Hawaii Property) to satisfy such a secured debt.

125. The California Supreme Court reviewed this similar fact pattern in *Security Pacific National Bank v Wozab*, 51 Cal. 3d 991 (Cal. 1990) and declared such a "banker's offset", of even a small cash amount, to be a violation of the One Action Rule the penalty for which was to preclude the lender from further foreclosing on its security interest.

**FIFTH CAUSE OF ACTION**

**Violation of One Action Rule**

**(Against Wells Fargo Bank, N.A.)**

126. Third Party Plaintiff hereby realleges each of the preceding paragraphs of this Complaint as though fully set forth at length hereat.

127. Third Party Defendant Wells Fargo Bank elected to take the proceeds by nonjudicial foreclosure of the Pasadena property in order to satisfy Cristine Sutton's debt secured by real property (the mortgage).

128. Wells Fargo then proceeded to demand the insurance policy proceeds from TRG to satisfy the same debt. Said offset is a clear violation of California's "One Action Rule" aka "The Security-First Rule" at Code of Civil Procedure §726. This rule states generally that a lender whose loan is secured by an interest real property must exclusively exhaust the security (foreclose on the property) and may not seize or offset any unsecured property (such as cash) to satisfy such a secured debt.

129. The California Supreme Court reviewed this similar fact pattern in *Security Pacific National Bank v Wozab*, 51 Cal. 3d 991 (Cal. 1990) and declared such a "banker's offset", of even a small cash amount, to be a violation of the One Action Rule the penalty for which was to preclude the lender from further foreclosing on its security interest.

## SIXTH CAUSE OF ACTION

### Cancellation of Documents

### (Against Wells Fargo Bank, N.A. and TRG )

130. Counter-claimant and Third Party Plaintiffs incorporate herein by reference the allegations made above and in each and every other cause of action in this pleading, whether specifically pled or in general, as though fully set forth herein.

131. TRG recorded a lis pendens on the Hawaii property.

132. The document purports, falsely and fraudulently an action has commenced concerning title to that property.

133. The Fraudulent lis pendens is fraudulent, void and conveyed no notice as to any interest in the Property because inter-alia: TRG has never held and did not hold any right or interest in the Hawaii property when it recorded its interest.

134. The Fraudulent lis pendens is tantamount to an attempted theft of the Counter-claimant and Third Party Plaintiff's interest in the Property and being used to strong arm the Suttons as TRG understands that they have effectively tied up the Sutton's credit without due process.

135. Accordingly, there is a reasonable apprehension that unless the Fraudulent lis pendens is cancelled, it will damage Counter-claimant and Third Party Plaintiffs in that the documents cloud Counter-claimant and Third Party Plaintiff's title to the Hawaii property and deprives Counter-claimant and Third Party Plaintiff of their interest in the

Property and purports the Counter-defendant and Third Party Defendants have a contested interest in the property and it is at issue in a lawsuit. Pursuant to Civil Code §3412, Counter-claimant and Third Party Plaintiffs are entitled to an order cancelling the Fraudulent documents and compelling delivery of the original documents to Counter-claimant and Third Party Plaintiff.

**SEVENTH CAUSE OF ACTION**

**Quiet Title**

**(Against All Counter-defendant and Third Party Defendants and Does 1 through 10)**

136. Counter-claimant and Third Party Plaintiffs incorporate herein by reference the allegations made above and in each and every other cause of action in this pleading, whether specifically pled or in general, as though fully set forth herein.

137. Counter-claimant and Third Party Plaintiffs, BRIAN SUTTON and CRISTINE SUTTON held and now holds an interest in the Subject Hawaii Property as the true owner holding the property in fee simple as husband and wife as joint tenants. The basis of Counter-claimant and Third Party Plaintiffs' title is a grant deed that was recorded in his favor and his continuing interest as the persons in possession of Subject Property.

138. This is their personal residence where they live.

139. Counter-claimant and Third Party Plaintiffs seek to quiet title against all Counter-defendant and Third Party Defendants, and each of them, as of the date this action is filed.

140. Counter-defendant and Third Party Defendants' claims to the Property, through the Fraudulent NOD and NOS, are adverse to the claim of Counter-claimant and Third Party Plaintiffs through the Counter-claimant and Third Party Plaintiff's grant deed.

141. Any claims by TRG through the lis pendens were fraudulent.

142. Counter-claimant and Third Party Plaintiff seeks to quiet title as against Counter-defendant and Third Party Defendants Wells Fargo and TRG and anyone else who claims any legal or equitable interest in the Property purportedly superior to that of Counter-claimant and Third Party Plaintiff as a result of any events under the congame where the Suttons were defrauded, victimized then villianized.

143. Counter-claimant and Third Party Plaintiff is informed and believes, and on that ground alleges, that Wells Fargo and TRG knew before recording the Fraudulent lis pendens that they were fabricated, fraudulent, void and that there was no real dispute as to the true owner of the Hawaii property.

144. Counter-claimant and Third Party Plaintiff does not know the exact names, capacities or interest in the Property of certain Counter-defendant and Third Party Defendants, which Counter-claimant and Third Party Plaintiff designates as "all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in that real property commonly described as 225 AUMOE ROAD, KAILUA, HAWAII, which claim would be adverse to Counter-claimant and Third Party Plaintiff's title to or interest in said property, or any cloud on Counter-claimant and Third Party Plaintiff's title to or interest in said property" Counter-claimant and Third Party Plaintiff seeks to quiet title in the Property against the claim of each such Counter-defendant and Third Party Defendant, and each such Counter-defendant and Third Party Defendant has no right, title, estate, line or interest in the Property. Counter-claimant and Third Party Plaintiff will serve this class of Counter-defendant and Third Party Defendants by publication as the court allows.

Wherefore Counter-claimant and Third Party Plaintiff demands judgment against Counter-defendant and Third Party Defendants as set forth below.

## EIGHTH CAUSE OF ACTION

**(Fraud)**

**(Against TRG and Wells Fargo Bank, N.A.)**

145. Counter-claimant and Third Party Plaintiffs incorporate by reference the allegations above as though fully set out herein.

146. The Fraudulent lis pendens recorded by TRG concurrent with filing this action in 2012 on the property located at 225 AUMOE ROAD, KAILUA, HAWAII is a fraudulent document. Counter-defendant and Third Party Defendant TRG was not the beneficiary or the employee or agent of the third party lender on the Hawaii property and had no authority or personal knowledge to attempt to enforce any secured interest recorded on the Hawaii property that Counter-defendant and Third Party Defendant caused to be recorded.

147. Counter-claimant and Third Party Plaintiff is informed and believes and alleges thereon that TRG not only knew TRG had no authority to execute the lis pendens on the Hawaii property but that TRG fabricated the appearance of the legitimacy of the lis pendens to defraud Counter-claimant and Third Party Plaintiffs of their interest in the Property.

148. Counter-defendant and Third Party Defendants' fraud has caused damage to Counter-claimant and Third Party Plaintiff, inter alia, Counter-claimant and Third Party Plaintiff must now remove the cloud on their title, thus placing them in imminent foreclosure and threatened sale of their property. Counter-claimant and Third Party Plaintiff is presently unaware of the precise amount of such damages but believes it approximates $1,500,000.00.

149. The conduct of Counter-defendant and Third Party Defendants, as alleged above, was fraudulent and malicious, thus entitling Counter-claimant and Third Party Plaintiff

to punitive or exemplary damages against each Counter-defendant and Third Party Defendant in an amount to be proven at or before trial.

150. As a result of the foregoing, TRG should be enjoined from any attempt to encumber the property located at 225 AUMOE ROAD, KAILUA, HAWAII..

151. The Pasadena property was the subject of the dispute in this action, as such TRG's representation that it concerned the Hawaii property was false.

152. These acts of deceit and misrepresentations were made in furtherance of Counter-defendant and Third Party Defendants goals of taking the Sutton home from them.

153. The aforementioned conduct of Counter-defendant and Third Party Defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the Counter-defendant and Third Party Defendant(s) with the intention on the part of the Counter-defendant and Third Party Defendant(s) of thereby depriving Counter-claimant and Third Party Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Counter-claimant and Third Party Plaintiff to a cruel and unjust hardship in conscious disregard of Counter-claimant and Third Party Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

Wherefore Counter-claimant and Third Party Plaintiff demands judgment against Counter-defendant and Third Party Defendants as set forth below.

**NINTH CAUSE OF ACTION**

**(Declaratory Relief)**

**(Against All Counter-defendant and Third Party Defendants and Does 1 through 10)**

54. Counter-claimant and Third Party Plaintiff incorporates in this cause of action all of the allegations above as though fully set forth herein.

55. **Preliminary Matter to Be Determined**: An actual controversy has arisen and now exists between Counter-claimant and Third Party Plaintiffs and Counter-defendant and Third Party Defendants concerning their respective rights and duties, and their interest in and to the Subject Property located in Pasadena, California and located in Hawaii, in addition to the $321,000.00 being held in trust by Counter-defendant and Third Party Defendant/Counter-claimant and Third Party Plaintiff's counsel in this case.

56. A judicial determination is necessary and appropriate at this time under the circumstances to verify and determine the respective rights and duties of the parties with respect to the Subject Property and funds. Specifically, Counter-claimant and Third Party Plaintiffs seek a judicial determination that:

a. The Lis Pendens recorded on the Hawaii Property is void and ineffective to convey any interest in and to the Subject Property;

b. Counter-claimant and Third Party Plaintiffs are entitled to an Order of this Court canceling the Lis Pendens on the Hawaii Property;

c. Wells Fargo is the real party in interest, if any, as to the Cristine Sutton loan;

d. Wells Fargo elected to foreclose on the Pasadena property to secure its interest in this case;

e. TRG has no standing to proceed against the Suttons for a money judgment on the grounds that Wells Fargo elected to proceed by foreclosure.

f. TRG rejected the insured's claim and instructed Wells Fargo to proceed with nonjudicial foreclosure;

g. TRG cannot now attempt to step into the shoes of Wells Fargo to proceed against the Suttons for monetary reimbursement as it would be prohibited by the One Action rule;

h. As for any liabilities that may be owed, it would be owed by McTigue and Melton to Wells Fargo and/or TRG.

i. Counter-defendant and Third Party Defendants and each of them are liable to the Suttons.

157. Such a declaration is necessary and appropriate at this time in order that Counter-claimant and Third Party Plaintiffs may ascertain their rights in and to the Subject Property.

158. A judicial determination is necessary and appropriate at this time under the circumstances to verify and determine the respective rights and duties of the parties with respect to the Subject Properties.

**TENTH CAUSE OF ACTION**

**Slander of Title**

**(Against "TRG")**

159. Counter-claimant incorporate in this cause of action all of the allegations above as though set forth in full herein

160. Counter-claimant believe that TRG's recording of the lis pendens on the Hawaii property knowing the dispute concerned the Pasadena property slandered Counter-claimants' interest in the Property. The claims of Counter-defendant are

without any right whatsoever, in that any and all such interests and rights are defective and as a matter of law are of no legal significance.

161. Counter-claimants were damages by the slander of title in that Counter-claimant's title to the Property was clouded and the marketability, salability and value of the Property was impaired.

162. As a proximate result of Counter-defendants' slander, Counter-claimant and Third Party Plaintiffs were unable to obtain other credit due to the cloud that this has put on the Hawaii property.

163. As a further proximate result of Counter-defendants' slander of title to the Property, Counter-claimant has been required to bring this action to clear title to the Property. Counter-claimant is entitled to recover all of its damages resulting from the slander of title including without limitation its attorneys' fees and costs incurred in bringing this action.

164. Counter-defendants' acts are malicious, oppressive, and fraudulent in that Counter-defendants have acted with the intent to harm Counter-claimant 's interest in the Property and are tantamount to an attempted theft of Counter-claimants' interest in the Property. Counter-claimant is therefore entitled to punitive damages.

## ELEVENTH CAUSE OF ACTION

### Indemnity and Contribution

### (Against "MCTIGUE" "MELTON" and Does 1 through 10)

165. Plaintiffs incorporate in this claim all of the allegations above as though set forth in full herein.

166. A Complaint entitled Title Resources Guaranty Company v Sutton, et al was filed on or about March 12, 2012, alleging damages arising as a result of an alleged incident. Said complaint, for purposes of its allegations only, is incorporated by reference herein as though fully set forth at length.

167. The Suttons are incurring and have incurred attorney's fees, court costs, investigative costs and other costs in connection with defending said complaint, the exact amount of which is unknown at this time. When the same has been ascertained, the Suttons will seek leave of court to amend this pleading to set forth the true nature and amount of said costs and expenses.

168. If the Suttons are held liable and responsible to TRG for damages as alleged in the First Amended Complaint, it will be solely due to the conduct of third party defendants, and each of them, as herein alleged. Therefore, the Suttons are entitled to be indemnified by said third party defendants, and each of them should such liability arise.

169. If the Suttons are held liable or responsible to TRG for damages, said liability will be vicarious only and said liability will be the direct and proximate result of the active and affirmative conduct on the part of the third party defendants, and each of them.

170. The Suttons are entitled to complete indemnification by said third party defendants, and each of them for any sum or sums for which he may be adjudicated liable to TRG, with costs of defense, costs of suit, and reasonable attorney's fees incurred therefrom.

## TWELFTH CAUSE OF ACTION

## Equitable Indemnity and Contribution

## (Against "WELLS FARGO," "MCTIGUE," "MELTON")

171. Plaintiffs incorporate in this claim all of the allegations above as though set forth in full herein.

172. The Suttons contend that they are in no way legally responsible for the events giving rise to the plaintiff's causes of action, or legally responsible in any other manner for the damages allegedly sustained by the plaintiff. However, if as a result of the matters alleged in plaintiff's complaint, the Suttons are held liable for all or any part of the claim or damages asserted against him by the plaintiff, Wells Fargo, McTigue and Melton, and each of them, to the extent that their fault was a proximate cause of plaintiff's damages and/or losses, are responsible for said damages and/or losses in proportion to each cross-defendants' comparative negligence and this cross-complainant is entitled to a determination of several liability.

173. By reason of the foregoing, the Suttons are entitled to indemnity from Wells Fargo, McTigue and Melton, and each of them, for all costs, fees, expenses, settlements and judgments paid by and incurred by cross-complainant in connection with this litigation.

**THIRTEENTH CAUSE OF ACTION**

**Comparative Indemnity and Contribution**

**(Against "WELLS FARGO," "MCTIGUE," "MELTON" and Does 1 through 10)**

174. Plaintiffs incorporate in this claim all of the allegations above as though set forth in full herein.

175. The Suttons allege that they are in no way legally responsible for the events giving rise to Plaintiff's action and are not legally responsible in any manner for the damages allegedly sustained by said plaintiffs. If, contrary to the foregoing allegations, the Suttons herein are held to be liable for all or any part of the claim for damages asserted against the Suttons by the plaintiffs, then the Suttons are informed and believes, and based upon such information and belief, alleges that Wells Fargo, McTigue and Melton, and each of them, were negligent, misrepresented certain facts, breached fiduciary duties, and breached contracts and/or agreements as alleged more particularly above. Cross-complainant is informed and believes at this time that the above acts of the cross-defendants, and each of them, were the proximate cause of the damages and/or losses to Plaintiff.

176. By reason of the foregoing, cross-defendants, and each of them, are responsible and liable for any such damages in direct proportion to the extent of their actions in bringing about said damages. If cross-complainant is found to be responsible for any of the damages of the plaintiffs, which cross-complaint vigorously disputes, then cross-complainant is entitled to judgment over and against cross-defendants, and each of them in an amount proportionate to the amount of cross-complainant's financial responsibility for such damages that exceed his portion of responsibility, if any.

**FOURTEENTH CAUSE OF ACTION**

**Set-Off**

**(Against "TRG" )**

177. Plaintiffs incorporate in this claim all of the allegations above as though set forth in full herein.

178. The Suttons contend that they are in no way legally responsible for the events giving rise to the plaintiff's causes of action, or legally responsible in any other manner for the damages allegedly sustained by the plaintiff. However, if as a result of the matters alleged in plaintiff's complaint, the Suttons are held liable for all or any part of the claim or damages asserted against him by the plaintiff, the Suttons are entitled to a Set Off, which the Suttons believe will far exceed any nominal amount that would be owed to Title Resources Guaranty Company in this action, to the extent that TRG's fault was a proximate cause of the Suttons' damages and/or losses, are responsible for said damages and/or losses and as such are entitled to a determination that would set off the judgment, if any awarded to the plaintiff in this case.

179. By reason of the foregoing, the Suttons are entitled to a setoff from TRG, for all costs, fees, expenses, settlements and judgments paid by and incurred by the Suttons in connection with this litigation.

## PRAYER FOR RELIEF

**WHEREFORE, Counter-claimant and Third Party Plaintiffs pray for judgment** against Counter-defendant and Third Party Defendants, and each of them, as follows:

**A.** Declaratory and injunctive relief;

**B.** A full accounting;

**C.** To quiet title of the Hawaii Property in favor of Counter-claimant and Third Party Plaintiff and against all Counter-defendant and Third Party Defendants;

**D.** For a declaration of the rights and duties of the parties, as to the property and funds being held in trust;

**E.** To cancel, vacate and set aside the Lis Pendens;

**F.** Actual, Special and General Damages as proven at trial;

**G.** Statutory damages and civil penalties;

**H.** Rescission and Disgorgement of profits;

**I.** Costs of this action, including the fees and costs of experts;

**J.** Attorneys' fees;

**K.** Prejudgment interest at the statutory rate;

**L.** Post-judgment interest;

**M.** Exemplary and Punitive Damages; and

**N.** Such other and further relief as this Court finds necessary and proper.

## DEMAND FOR JURY TRIAL

Counter-claimant and Third Party Plaintiffs hereby demand a jury trial.

Dated: June 10, 2012

Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT

/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Counter-claimant and Third Party Plaintiff, BRIAN SUTTON and CRISTINE SUTTON

## VERIFICATION

I am the Defendant, Counter-Claimant and Third Party Plaintiff in this action; the foregoing Counterclaims and Third Party Complaint is true of my knowledge, except as to the matters stated in it on my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 10, 2012

See attached
BRIAN SUTTON

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 10, 2012

See attached
CRISTINE SUTTON

## VERIFICATION

I am the Defendant, Counter-Claimant and Third Party Plaintiff in this action; the foregoing Counterclaims and Third Party Complaint is true of my knowledge, except as to the matters stated in it on my information or belief and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 10, 2012

BRIAN SUTTON

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 10, 2012

CRISTINE SUTTON

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA 92647.

On June 11, 2012, I served a copy of the following document(s) described as: **COUNTER CLAIM AND THIRD PARTY COMPLAINT OF CRISTINE SUTTON AND BRIAN SUTTON**

On the interested parties in this action as follows:

Green & Hall, APC
Howard D. Hall, Esq.
1851 E First Street, 10th Floor
Santa Ana, CA 92705
Ph: 714-918-7000

[] **BY US MAIL** – I caused such document(s) to be placed in pre-addressed envelope(s) with postage thereon fully prepaid and sealed, to be deposited as US Mail for delivery at Westminster, California, to the aforementioned addressee(s).

[x] **BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).

[ ] **BY EMAIL** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth.

[ ] **BY FAX** – I caused such document(s) to be transmitted facsimile from the offices located in Westminster, California this business day to the aforementioned recipients.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: June 11, 2012

/s/ Lenore Albert
Lenore Albert

# EXHIBIT A

P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION ENCLOSED

11 96900 2484 0149 7827 4

Mailed On: 1/10/2012
Reference Number: CA1100227553
Mailing Number: 0002396-01 ClientID: FATSS000306 FC

CHANG, CRISTINE
225 AUMOE RD
KAILUA, HI 96734-3445

**IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTTACHED NOTICE. PLEASE READ CAREFULLY**

First American Trustee Servicing Solutions, LLC may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.

Visit us at www.fatrustee.com for more information.

Recording Requested By
First American Title Insurance Company

CERTIFIED BY FIRST AMERICAN TITLE INSURANCE COMPANY TO BE A COPY OF THE DOCUMENT RECORDED ON 01/06/2012 AS INSTRUMENT NO. 2012-0021796 IN BOOK PAGE OFFICIAL RECORDS OF LOS ANGELES

When Recorded Mail To:
**First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**

TS No.: **CA1100227553** APN: **5722-033-054**
TSG No. **5290385**

**Pursuant to California Civil Code Section 2924c(b)(1) please be advised of the following:**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$16,790.34** as of **01/05/2012**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than approximately 90 days after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise, or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**US Bank National Association, as Trustee for CMLTI 2007-0**
**c/o First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**
**877-276-1894**

TS No.: CA1100227553 TSG No.: 5290385
VA/FHA/PMI No.:

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **First American Trustee Servicing Solutions, LLC** is either the original trustee, the duly appointed substitute trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **08/23/2006**, executed by:

CRISTINE CHANG, A SINGLE WOMAN,

as Trustor(s) to secure certain obligations in favor of **WELLS FARGO BANK, N.A.** as Beneficiary, recorded **08/25/2006**, (as Instrument No.) **06 1899210**, (in Book) , (Page) of Official Records in the Office of the Recorder of **LOS ANGELES COUNTY, CALIFORNIA** describing land therein as:
**380 SOUTH EUCLID AVENUE, UNIT #307**
**, PASADENA, CA 91101,**
AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST

said obligations including ONE NOTE FOR THE ORIGINAL sum of **$321,000.00**.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/1/2010 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES. NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: **Jan 05, 2012**

**First American Trustee Servicing Solutions, LLC**
**6 Campus Circle, 2nd Floor**
**Westlake TX 76262**

By: Wendy Randall (signature)
Name: WENDY RANDALL
Title:

**First American Trustee Servicing Solutions, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

See Attached Declaration

| | |
|---|---|
| **Title Company:** | First American Title Insurance Company |
| **Loan Number:** | 0155062003 |
| **TS Number:** | CA1100227553 |
| **TSG Number:** | 5290385 |
| **Borrower:** | CHANG, CRISTINE |
| **County:** | Los Angeles |
| **Startover:** | |

# NOTICE OF DEFAULT DECLARATION

PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: CRISTINE CHANG
Co Borrower:
Property Address: 380 SOUTH EUCLID AV
PASADENA CA 91101

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007. Non-owner occupied and vacant properties are exempt from the requirements of CA Civil Code 2923.5.

The requirement indicated by "X" was met by the Beneficiary:

_ The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

X Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

_ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

_ The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

_ The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

_ An Exemption as identified in 2923.5 (h) & (i) applies: The loan did not originate between January 1, 2003 and December 31, 2007 or the property is deemed Non-owner occupied or vacant.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 1/3/12

Wells Fargo Bank, N.A.
Jonathan C. Stover
VP of Loan Documentation

**First American Trustee Servicing Solutions, LLC**
6 Campus Circle, 2nd Floor
Westlake, TX 76262
**Telephone:** (866) 429-5179
**Fax:** (817) 699-1487

**Jan 10, 2012**

FILE NUMBER **CA1100227553**
**CRISTINE CHANG**
**225 AUMOE RD**
**KAILUA, HI 96734-3445**

Re Loan No. **0155062003**
TS #: **CA1100227553**

The current creditor to whom the debt is owed is **WELLS FARGO BANK, N.A.**. The loan is serviced by **Wells Fargo Home Mortgage** **First American Trustee Servicing Solutions, LLC** has been authorized by the Servicer/Creditor to initiate foreclosure proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan.

The amount of the debt as of the date of this Notice according to the records of our client is **$345,296.15**. The amount necessary to bring the loan into good standing and reinstate your mortgage is set forth in the enclosed Notice of Default and Election to Sell Under Deed of Trust. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above or in the enclosed Notice of Default and Election to Sell Under Deed of Trust, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection. For further information, write the undersigned or call **(866) 429-5179**

Please be advised that **First American Trustee Servicing Solutions, LLC** may be considered a debt collector attempting to collect the above referenced debt. Any information obtained from you may be used for that purpose. Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, **First American Trustee Servicing Solutions, LLC** will assume that it's valid. If you do dispute it - - by notifying **First American Trustee Servicing Solutions, LLC** in writing to that effect - - **First American Trustee Servicing Solutions, LLC** will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, **First American Trustee Servicing Solutions, LLC** will furnish you with that information too.

The law does not require **First American Trustee Servicing Solutions, LLC** to wait until the end of thirty-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires LoanStar to suspend its efforts (through litigation or otherwise) to collect the debt until **First American Trustee Servicing Solutions, LLC** mails the requested information to you.

The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www ftc gov

Sincerely,
**First American Trustee Servicing Solutions, LLC**

08/25/06

RECORDING REQUESTED BY:
California Title Company

AND WHEN RECORDED MAIL TO:

Miss Cristine Mahealani Chang
380 South Euclid Avenue #307
Pasadena, CA 91101

06 1899209

THIS SPACE FOR RECORDER'S USE ONLY:

Title Order No.: 06-43069-01 Escrow No.: 076-000371-TH

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

**DOCUMENTARY TRANSFER TAX is $588.50**

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area [X] City of Pasadena

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Richard L. Walton and Deanna L. Walton, Husband and Wife as Joint Tenants**

hereby GRANT(s) to:

**Cristine ~~Mahealani~~ Chang, a Single Woman**

the real property in the City of Pasadena, County of Los Angeles, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as: 380 South Euclid Avenue #307, Pasadena, CA 91101
AP#: 5722-033-054

**DATED July 19, 2006**
STATE OF CALIFORNIA
COUNTY OF Los Angeles
On August 22, 2006
Before me, Tracy R. Hawkins
A Notary Public in and for said State, personally appeared
Richard L. Walton
Deanna L Walton

[signature] Richard L. Walton

[signature] Deanna L. Walton

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

TRACY R. HAWKINS
COMM. # 1544044
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 14, 2009

Signature Tracy R. Hawkins (This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE: